Filed 11/15/13  Swartz v. Coldwell Bankers CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| KEVIN F. SWARTZ et al., | D062324 |
| Plaintiffs and Appellants, | |
| v. | (Super. Ct. No. 37-2011-0051200 CU-IC-NC) |
| COLDWELL BANKER RESIDENTIAL BROKERAGE COMPANY et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of San Diego County, Jaqueline M. Stern, Judge.  Affirmed.

Naumann Law Firm, William H. Naumann and Monnett De La Torre for Plaintiffs and Appellants.

Keeney Waite & Stevens, Mary M. Best and Todd F. Stevens for Defendants and Respondents.

I.

INTRODUCTION

In this case we consider whether a licensed real estate agent owed her client a duty to conduct an independent review of public records or a duty to engage in additional investigation to ascertain the existence of a recorded covenant burdening property prior to her client purchasing the property, when that covenant was not identified by a title insurance company in its preliminary report or its policy of title insurance.

Kevin F. Swartz and Diane Kocheran (plaintiffs) named Coldwell Banker Residential Brokerage Company, NRT, LLC, Coldwell Banker Real Estate, LLC, and Claudia Anderson (jointly "the Coldwell defendants") in a second amended complaint (SAC) alleging causes of action for breach of fiduciary duty, negligent misrepresentation, and negligence against these defendants. The Coldwell defendants demurred to the causes of action asserted against them in the SAC on multiple grounds, and the trial court sustained the demurrer without leave to amend on the ground that the causes of action were untimely under the applicable statute of limitations. The court sustained the demurrer as to the cause of action for negligent misrepresentation on the additional ground that the SAC failed to allege the existence of a false statement made to plaintiffs, and sustained the demurrer as to the breach of fiduciary duty and negligence causes of action on the additional ground that plaintiffs failed to plead facts that would establish that the Coldwell defendants owed a duty to plaintiffs and breached that duty.

On appeal, plaintiffs argue that their claims were not untimely because they did not discover, and could not reasonably have discovered, the Coldwell defendants' failure

2

to meet their fiduciary duties until they learned of the recorded covenant during litigation with the sellers of the property, who, at that point, were asserting their rights pursuant to the easement on plaintiffs' property that was the subject of the recorded covenant.[1] Plaintiffs also contend that their SAC sufficiently states causes of actions for breach of fiduciary duty, negligent misrepresentation, and negligence.

We conclude that the SAC fails to state causes of action for breach of fiduciary duty, negligent misrepresentation, and negligence. The conduct for which plaintiffs seek relief under the theories of breach of fiduciary duty and negligence do not establish that the Coldwell defendants owed a duty to plaintiffs and failed to meet that duty. Further, plaintiffs failed to allege that the Coldwell defendants made any "misrepresentation" to support their cause of action for negligent misrepresentation. The trial court thus did not err in sustaining the Coldwell defendants' demurrer.

With respect to the trial court's conclusion that the causes of action against the Coldwell defendants should be dismissed with prejudice, we agree. Plaintiffs fail to make any argument as to how they could amend to state causes of action for breach of fiduciary duty or negligence. (See *Davies v. Sallie Mae, Inc.* (2008) 168 Cal.App.4th 1086, 1090 (*Davies*) [" 'The plaintiff has the burden of proving that an amendment would cure the defect [citation]' "].) Although plaintiffs do identify how they could amend the operative complaint to state a cause of action for negligent misrepresentation, we conclude that this claim is time-barred, and thus, leave to amend would not be

[1]     With respect to the easement, plaintiffs' property is the servient estate, and the sellers' property is the dominant estate.

3

appropriate. We therefore affirm that portion of the trial court's order denying plaintiffs leave to amend to attempt to plead any causes of action against the Coldwell defendants.

II.

FACTUAL AND PROCEDURAL BACKGROUND[2]

In November 2006, plaintiffs retained Anderson, a licensed real estate agent for Coldwell Banker, to represent them in a transaction to purchase residential property from Tye and Lori Smith (the sellers). The sellers own an adjacent parcel and built both the home located on their own parcel as well as the home on the parcel that plaintiffs purchased. According to plaintiffs, prior to the purchase, the sellers represented to plaintiffs that the property that plaintiffs intended to purchase was burdened by an easement, but that the easement was "unusable." Plaintiffs obtained a preliminary title report from defendant Fidelity National Title Insurance (Fidelity) and a title insurance policy that described the relevant easement as a "Proposed Private Road Easement."[3]

---

[2]    We take the factual background from the SAC, to the extent that its allegations are not contradicted by allegations asserted in the prior complaints. (See *Haggis v. City of Los Angeles* (2000) 22 Cal.4th 490, 495 ["On appeal from dismissal following a sustained demurrer, we take as true all well-pleaded factual allegations of the complaint"].)

[3]    Attached to the SAC is a copy of "Schedule A" and "Schedule B" to the title insurance policy. Although the SAC alleges that the title insurance policy describes the relevant easement as a "Proposed Private Road Easement," in fact, "Schedule A" describes the property and easement in the following manner:

"Parcel 1 of Parcel Map No. 15792, in the County of San Diego,
State of California, according to Map thereof, filed in the Office of
the County Recorder of San Diego County, February 27, 1992.

4

Plaintiffs purchased the property from the sellers, and obtained title to the property in January 2007.

In March 2009, plaintiffs filed a lawsuit against the sellers and the sellers' real estate agent related to various construction defects on the property. In a first amended complaint in that action, which included claims for quiet title, negligence, and fraud, in addition to construction defects, nuisance and trespass, plaintiffs alleged that the sellers had failed to disclose that they were asserting "an easement on the subject property" or the "existence of what the SMITH Defendants are now claiming is a usable road easement." Plaintiffs specifically alleged that the sellers had represented to them "[t]hat there were no encroachments, easements, or similar matters that might [a]ffect the subject property" and "[t]hat the alleged easement was not useable."

Plaintiffs allege in the SAC that during the course of their lawsuit against the sellers, they learned that the Smiths' predecessor in interest had executed and recorded a "Covenant of Improvement Requirements" (covenant) that burdened the property. The covenant required the developer of the property (i.e., the Smiths) to construct site improvements, including a paved access road on the portion of the property that plaintiffs ultimately purchased. At the time plaintiffs purchased the property, there was no access road. Fidelity did not identify the recorded covenant in either the preliminary title report or the title insurance policy.

---

"Reserving an easement for road and utility purposes over, under, along and across those portions *designated as* 'Proposed Private Road Easement' and 'Proposed 20 Foot Wide Private Road Easement' on said Parcel Map." (Italics added.)

5

Plaintiffs filed their original complaint in this action on February 4, 2011, naming Fidelity National Title Insurance Company and multiple Does as defendants. After substituting in a new attorney, plaintiffs filed a second amended complaint (SAC) on October 12, 2011, in which they added the Coldwell defendants,[4] and asserted causes of action against the Coldwell defendants for breach of fiduciary duty, negligent misrepresentation and negligence.[5]

In the SAC, plaintiffs alleged that they obtained a title policy issued by Fidelity and, "in reliance on the Preliminary Report [issued by Fidelity], . . . proceeded to purchase" the property. Plaintiffs further alleged that "[d]uring the course of discovery in their lawsuit against the sellers [the First Action], Plaintiffs learned for the first time that previous owners of the subject property had executed and recorded a Covenant of Improvement Requirements [Covenant] that burdens the subject property."

The Coldwell defendants filed a demurrer to plaintiffs' SAC in November 2011. The trial court held a hearing on the demurrer on March 9, 2012. At the conclusion of the hearing, the trial court sustained the Coldwell defendants' demurrer to the SAC, without leave to amend. The court entered a judgment dismissing the Coldwell defendants from the action, with prejudice. Plaintiffs filed a timely notice of appeal.

---

[4]    The SAC continued to name Fidelity as a defendant, and asserted against Fidelity causes of action for breach of contract, indemnification, and breach of the covenant of good faith and fair dealing.

[5]    Although the sixth cause of action in the operative complaint is titled "Negligence," plaintiffs are alleging that the Coldwell defendants had a duty to meet the standard of care of a reasonably prudent real estate licensee. The sixth cause of action is thus more properly considered one for professional negligence.

## III.

## DISCUSSION

A.     *Standards of review*

We review de novo an order sustaining a demurrer to determine whether the complaint alleges facts sufficient to state a cause of action.  (*CPF Agency Corp. v. Sevel's 24 Hour Towing Service* (2005) 132 Cal.App.4th 1034, 1042.)  We exercise our independent judgment as to whether the complaint states a cause of action, "giv[ing] the complaint a reasonable interpretation" and "treat[ing] the demurrer as admitting all properly pleaded material facts."  (*Palestini v. General Dynamics Corp*. (2002) 99 Cal.App.4th 80, 86.)  In doing so, we assume the truth of "(1) all facts properly pleaded by the plaintiff, (2) all facts contained in exhibits to the complaint, (3) all facts that are properly the subject of judicial notice, and (4) all facts that may reasonably be inferred" from such facts.  (*Neilson v. City of California City* (2005) 133 Cal.App.4th 1296, 1305.)  We do not, however, accept the truth of allegations that constitute legal contentions, conclusions of law, or deductions drawn from those legal contentions or conclusions.  (*Ibid*.)

When a demurrer is sustained without leave to amend, "we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm.  [Citations.]  The burden of proving such reasonable possibility is squarely on the plaintiff."  (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)

7

B.     *The complaint does not allege facts sufficient to state a cause of action against the Coldwell defendants.*

1.     *Breach of fiduciary duty (fourth cause of action)*

"The elements of a cause of action for breach of fiduciary duty are the existence of a fiduciary relationship, its breach, and damage proximately caused by that breach." (*City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc*. (1998) 68 Cal.App.4th 445, 483.)

"The law imposes on a real estate agent 'the same obligation of undivided service and loyalty that it imposes on a trustee in favor of his beneficiary.' [Citations.] This relationship not only imposes upon him the duty of acting in the highest good faith toward his principal but precludes the agent from obtaining any advantage over the principal in any transaction had by virtue of his agency." (*Batson v. Strehlow* (1968) 68 Cal.2d 662, 674-675.) A real estate licensee is "charged with the duty of fullest disclosure of all material facts concerning the transaction that might affect the principal's decision." (*Rattray v. Scudder* (1946) 28 Cal.2d 214, 223; see also *Realty Projects, Inc. v. Smith* (1973) 32 Cal.App.3d 204, 210; *Smith v. Zak* (1971) 20 Cal.App.3d 785, 792-793.)

Plaintiffs assert that the Coldwell defendants were their fiduciaries with respect to the purchase of the property, and, as such, owed them certain duties. For example, plaintiffs maintain that the Coldwell defendants owed them a duty to "exercise the highest duty of loyalty," to "affirmatively protect the interests of Plaintiffs," and "to refrain from any conduct resulting in a disadvantage to Plaintiffs." Plaintiffs allege that

8

the Coldwell defendants' fiduciary duty "required them to make full and truthful disclosure to Plaintiffs of all facts known to [the Coldwell defendants] or <u>discoverable by them with reasonable diligence</u>, and likely to affect the Plaintiffs and Plaintiffs' decision to purchase the Subject Property."  (Underscore in original.)  Plaintiffs further allege that the Coldwell defendants' duty included the "duty to learn of material facts that may affect the Plaintiffs' decision" and a "duty to counsel and advise Plaintiffs regarding the propriety and ramifications of their decision."

With respect to the alleged breach of these duties, the operative complaint states that the Coldwell defendants "were aware of material facts or could have discovered through reasonable diligence various material facts affecting Plaintiffs' decision to purchase the Subject Property."  The complaint identifies those "material facts" as the following:  (1) "A duly recorded Covenant of Improvement Requirements burdened the Subject Property . . . ";  (2) "The COVENANT affected title to the Subject Property"; and (3) "The COVENANT required certain items including but not limited to: construction of numerous quasi-public site improvements . . . ."  Plaintiffs allege that the Coldwell defendants "had no reasonable basis for failing to or disregarding the importance of inspection of public records or permits to ensure title to Subject Property was free and clear of any encumbrances or defects . . . ."

In sum, plaintiffs allege that "had [the Coldwell defendants] acted properly in their duties as fiduciaries and undertaken a diligent investigation of public records and of the Subject Property itself, the full extent of any encumbrances or defects in title to the

9

Subject Property would have been ascertained and Plaintiffs would not have purchased the Subject Property."

Plaintiffs are asserting that the Coldwell defendants breached their fiduciary duties by failing to independently determine that the covenant existed, despite the fact that the title insurance company failed to identify the covenant in either the preliminary title report or the title insurance policy. In essence, plaintiffs seek to expand the scope of a real estate agent's duty to his or her client to include a duty to conduct an independent investigation and search of the public record to find recorded documents pertaining to the property that were not disclosed by the title insurance company. However, the scope of a real estate agent's duty to his or her clients is not so broad as to encompass the duty that plaintiffs propose.

"In California . . . the parties rely on title insurance companies, whose fundamental purpose is to *search* the public land records, *report* their findings as to the status of title, and provide an *indemnity policy* insuring their findings." (Greenwald & Asimow, Cal. Practice Guide: Real Property Transactions (The Rutter Group 2011) ¶ 3:2, pp. 3-1 to 3-2.) In addition, a real estate transaction "can involve many issues that are outside the scope of the typical broker's expertise; some such as legal issues, tax matters, accounting issues, construction, engineering, and hazardous materials, require the assistance of other professionals," and a "broker is not obligated to provide advice in subjects outside [the broker's] core real estate expertise." (California Real Property Sales Transactions (Cont.Ed.Bar 4th ed. 2010) § 2.151, p. 201.) Real estate agents are entitled to rely on the expertise of other professionals who are hired to complete a task in their own area of

expertise. Thus, where a title insurance company is hired to perform the task of searching the public record, a real estate agent is entitled to rely on the work of the title insurance company and does not have a duty to independently search the public record to ensure that the title company has completed its job correctly.

The only authority on which plaintiffs rely in an attempt to establish that the duties owed by a real estate licensee to a client include a duty to independently search the public record to find recorded documents pertaining to the property that a client seeks to purchase is the case of *Field v. Century 21 Klowden-Forness Realty* (1998) 63 Cal.App.4th 18 (*Field*). *Field* does not expand the scope of the duty of a real estate agent in the manner in which plaintiffs contend. In *Field*, the plaintiffs alleged claims of negligence, negligent misrepresentation, and breach of fiduciary duty against defendant Century 21, based on the defendant's "failure to inspect related title documents and to determine the scope of an easement in favor of Otay Water District." (*Id.* at p. 21.) The issue on appeal in *Field* was whether the two-year statute of limitations established by Civil Code section 2079.4 applied to claims for a breach of fiduciary duty brought against real estate brokers by purchasers whom they exclusively represented. The *Field* court concluded that actions by purchasers against brokers who represent them exclusively in a real estate purchase transaction are not limited by the two-year time bar of Civil Code

11

section 2079.4, which applies to breaches of the duties imposed on brokers by Civil Code sections 2079 through 2079.24. (*Field*, *supra*, at p. 20.)[6]

The facts in *Field* established that the Fields' real estate agent not only had "not inspect[ed] the preliminary title report in a timely manner, she did not even receive it from the title company until *after* escrow closed." (*Field*, *supra*, 63 Cal.App.4th at p. 22.) At trial, experts for both the plaintiffs and defendants agreed that the real estate agent had breached her duty to the Fields "*by not reviewing the preliminary title report before the close of escrow* to verify, among other things, the scope of the easement revealed in the transfer disclosure statement." (*Id*. at pp. 22-23, italics added.) Notably, the *Field* court did not suggest that the real estate agent had breached any duty by failing to independently investigate the public record to determine the extent of the easement. (*Id*. at p. 23.)

In rejecting the proposition that the two-year statute of limitations in Civil Code section 2079.4 applies to claims of breach of fiduciary duties brought by a real estate purchaser against his or her own exclusive broker, the *Field* court explained that "the *fiduciary* duty owed by brokers to their own clients is substantially more extensive than the *nonfiduciary* duty codified in section 2079," and that application of a the "two-year-

_____

6    As the *Field* court explained, Civil Code "[s]ection 2079 requires sellers' real estate brokers, and their cooperating brokers, to conduct a 'reasonably competent and diligent visual inspection of the property,' and to disclose all material facts such an investigation would reveal to a prospective buyer." (*Field*, *supra*, 63 Cal.App.4th at p. 23.) Civil Code section 2079.4 establishes a two-year statute of limitations for breaches of the duties imposed by section 2079, commencing at the date of possession of the property. (*Field*, *supra*, at pp. 23-24.)

from-possession limitation" in Civil Code section 2079.4 would unduly "restrict the ability of buyers to obtain redress for duties owed by their own real estate licensees which existed before section 2079.4 was enacted." (*Field*, *supra*, 63 Cal.App.4th at p. 25.) The *Field* court reviewed the fiduciary duties owed by a real estate professional to his or her client, which exist independent of the nonfiduciary duties created by the Civil Code that a real estate professional owes to a purchaser of real property who is not his or her client. After identifying the fiduciary duties owed by a real estate professional to his or her client, the *Field* court broadly asserted: "Thus, depending on the circumstances, a broker's fiduciary duty may be much broader than the duty to visually inspect and may include a duty to inspect public records or permits concerning title or use of the property, a duty which is expressly excluded from section 2079." (*Field*, *supra*, at p. 26.)

Plaintiffs' contention that the Coldwell defendants owed them a duty to independently search the public record is based on the *Field* court's statement that "a broker's fiduciary duty may be much broader than the duty to visually inspect and may include a duty to inspect public records or permits concerning title or use of the property." (*Field*, *supra*, 63 Cal.App.4th at p. 26). Plaintiffs maintain that if the Coldwell defendants had searched the public records, they would have found the covenant. However, this language from *Field* is dicta. The *Field* court did not have to consider how far the scope of the fiduciary duties owed by a real estate licensee might extend, since in that case it was clear that the plaintiffs' real estate agent had failed to even examine the preliminary title report.

13

In this case, in contrast to *Field*, plaintiffs do not allege that the Coldwell defendants failed to read the title report or pass on to them the information that the title company had identified the existence of an easement that was clearly marked on the recorded parcel map. Further, unlike in *Field*, an examination of the preliminary title report would not have led the real estate agent to the covenant at issue, since the title insurance company did not identify the covenant in any of its documents.

We do not believe that *Field* stands for the proposition that a real estate licensee may not rely on the professional assistance of a title company in matters related to encumbrances on the property, and instead must independently research the public record to determine whether there are any encumbrances on the property that are not identified by the title company in its report or title insurance policy. We decline to impose such a duty on real estate professionals. A real estate agent is entitled to rely on the reporting of a title company to the same extent as a purchaser of real property, and does not have an affirmative duty to independently scour the public record to "double check" the work of a title company.

Plaintiffs also suggest, without citation to the operative complaint, that the duty they are seeking to impose on the Coldwell defendants is not a duty to search public records for encumbrances on property, but rather, a broader duty to do something to "verify whether such easements [i.e., 'unusable' or 'proposed' easements] existed." However, plaintiffs later specify that what they believe the Coldwell defendants should have done, and had a duty to do, was to "perfor[m] necessary research and investigation, and disclose that information." Thus, although plaintiffs complain that the Coldwell

14

defendants and the trial court improperly "narrow[ed] the duty that Plaintiffs' allege the Coldwell Defendants owed to them" by defining that duty as a duty to independently search public records, we disagree. The allegations of the operative complaint, as well as plaintiffs' briefing, confirm that the duty they allege the Coldwell defendants owed them is a duty to conduct an independent investigation to identify encumbrances on the property that were not identified by the title company. As we have already explained, a real estate licensee's fiduciary duties to a client do not require that the licensee search the public record to attempt to discover other recorded documents that affect the property that the title company failed to identify. This is not a situation in which a real estate professional failed to pass along material information to the client, or, as in *Field*, failed to review the preliminary title report prior to the closing of escrow. In *Field*, the real estate agent's conduct effectively prevented the purchasers from knowing what was in the title report or considering that information prior to making the purchase. Here, plaintiffs were aware of the contents of the title report, and knew that an easement existed. Their real estate agent did not have an additional duty to independently "check" the completeness of the title insurance company's work. We conclude that plaintiffs have failed to state a cause of action for breach of fiduciary duty under the facts alleged in the SAC.

2.      *Negligent misrepresentation (fifth cause of action)*

"The elements of negligent misrepresentation are (1) the misrepresentation of a past or existing material fact, (2) without reasonable ground for believing it to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) justifiable reliance

15

on the misrepresentation, and (5) resulting damage. [Citation.] In contrast to fraud, negligent misrepresentation does not require knowledge of falsity. A defendant who makes false statements ' "honestly believing that they are true, but without reasonable ground for such belief, . . . may be liable for negligent misrepresentation . . . ." [Citations.]' [Citation.] However, a positive assertion is required; an omission or an implied assertion or representation is not sufficient." (*Apollo Capital Fund, LLC v. Roth Capital Partners, LLC* (2007) 158 Cal.App.4th 226, 243.) Although the Supreme Court has not decided the issue, it appears that the rules for pleading fraud may apply to negligent misrepresentation. (See *Small v. Fritz Companies, Inc*. (2003) 30 Cal.4th 167, 184 [holding that heightened pleading standard for fraud applies to claim for negligent misrepresentation in an action for securities fraud, but "express[ing] no view on whether this pleading requirement would apply in other actions for negligent misrepresentation"]; see also *Charnay v. Cobert* (2006) 145 Cal.App.4th 170, 185, fn. 14 ["Fraud and negligent misrepresentation must be pleaded with particularity and by facts that ' " 'show how, when, where, to whom, and by what means the representations were tendered.' " ' "].)

The allegations of the operative complaint state that the Coldwell defendants "negligently misrepresented and/or withheld important material facts related to the Subject Property including but not limited to: Defects in the Subject Propert[y's] title history, the existence of a valid easement, and the existence of a duly recorded Covenant of Improvement Requirements." Plaintiffs allege that these "representations, or lack thereof, regarding title were false," and that the Coldwell defendants knew or in the

16

exercise of reasonable diligence should have known of the existence of the encumbrances and thus should have known that these representations were not true.

Plaintiffs failed to allege in the operative complaint the existence of even a single false statement that the Coldwell defendants made to them. Rather, the allegations supporting this cause of action appear to be the same facts that plaintiffs allege to support their other causes of action against the Coldwell defendants, namely, that the Coldwell defendants failed to adequately investigate the existence of the nature of the easement on the property. Thus, rather than identifying any affirmative statement made by the Coldwell defendants, plaintiffs appear to be relying on the Coldwell defendants' failure to investigate and to inform plaintiffs about the nature and extent of the recorded covenant identifying the easement encumbering the property—i.e., the failure to make a statement to plaintiffs. However, a "negligent misrepresentation claim 'requires a positive assertion,' not merely an omission." (*Lopez v. Nissan North America, Inc*. (2011) 201 Cal.App.4th 572, 596.)

Because plaintiffs made no allegations of any affirmative misrepresentation on the part of any of the Coldwell defendants, the trial court properly sustained the Coldwell defendants' demurrer to the negligent misrepresentation cause of action.

3. *Negligence (sixth cause of action)*

"The elements of a claim for professional negligence incorporate a specific standard of care into the elements of a negligence claim." (*Burgess v. Superior Court* (1992) 2 Cal.4th 1064, 1077.) " 'The elements of a cause of action in tort for professional negligence are: (1) the duty of the professional to use such skill, prudence and diligence

17

as other members of his profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the professional's negligence. [Citations.]' " (*Ibid.*)

To make out their sixth cause of action, plaintiffs allege that the Coldwell defendants owed them a duty of care "to perform services competently, prudently, and thoroughly," and that the Coldwell defendants failed to meet this standard of care by "fail[ing] to fully investigate the material defects in title, failures, and deficiencies with the Subject Property which were known and/or should have been known to [the Coldwell defendants]; and in failing to so act, breached the aforesaid duties of due care." Plaintiffs further claim that as a result of this alleged breach, they purchased the property, which suffered from material defects, to their detriment.

As with their cause of action for breach of fiduciary duty, plaintiffs allege in their claim for negligence that the specific breach was the Coldwell defendants' failure to complete an independent search of the public record to discover an encumbrance on the property that the title company failed to identify in the preliminary title report and title insurance policy. However, under the specific facts alleged in this complaint, we must conclude that the duty of care owed by the Coldwell defendants to use the skill, prudence and diligence that other members of the profession commonly possess and exercise does not extend so far as to require them to independently comb the public record in an attempt to find recorded encumbrances that the title insurance company failed to include in its preliminary report and title insurance policy. We therefore conclude that plaintiffs

18

have failed to state a claim against the Coldwell defendants for negligence, and we affirm the trial court's sustaining of the demurrer as to this cause of action alleged against the Coldwell defendants.

C.    *Plaintiffs have not demonstrated a reasonable possibility that the defects in the SAC could be cured*

We next consider whether plaintiffs have established that there is some manner in which they could amend the operative pleading to cure the defects that we have identified.  It is clear that the burden to establish the possibility of curing any defect rests upon plaintiffs' shoulders.  (See *Davies*, *supra*, 168 Cal.App.4th at p. 1090 [" 'The plaintiff has the burden of proving that an amendment would cure the defect [citation]' "].)

Plaintiffs do not suggest in their briefing on appeal what additional facts they would allege with respect to the fourth and sixth causes of action (breach of fiduciary duty and negligence) to attempt to cure the defects in these causes of action.  They have thus failed to meet their burden of establishing that an amendment would cure the defects with respect to their claims for breach of fiduciary duty and negligence.

Plaintiffs do, however, set forth an argument in which they explain how they could amend the operative complaint to state a cause of action for negligent misrepresentation. Plaintiffs contend that after the sellers disclosed an " 'unusable easement,' " they asked Anderson, their real estate agent, about the " 'unusable easement.' "  Plaintiffs allege that rather than looking into the issue further or offering them guidance with respect to this easement, Anderson represented to them, prior to the close of escrow, "that everything

19

was fine and to proceed with the transaction." They further contend that Anderson had no reasonable ground for believing that "everything was fine," that she intended for them to rely on her assertion that "everything was fine," and that they did in fact rely on that assertion and went through with the transaction, suffering damage as a result.[7]

However, even assuming that plaintiffs could allege sufficient facts to state a cause of action for negligent misrepresentation, it is clear that such a claim would be untimely under any of the potentially applicable statutes of limitations. "The limitations period, the period in which a plaintiff must bring suit or be barred, runs from the moment a claim accrues. [Citations.] Traditionally at common law, a 'cause of action accrues "when [it] is complete with all of its elements"—those elements being wrongdoing, harm, and causation.' [Citation.] This is the 'last element' accrual rule: ordinarily, the statute of limitations runs from 'the occurrence of the last element essential to the cause of action.' " (*Aryeh v. Canon Business Solutions, Inc*. (2013) 55 Cal.4th 1185, 1191.)

---

[7] Although the statement that "everything [is] fine" may appear to be a statement of opinion, as opposed to a fact subject to verification, it is possible that such a statement, coming from a real estate agent, could be treated as a representation of fact. "Under certain circumstances, expressions of professional opinion are treated as representations of fact. When a statement, although in the form of an opinion, is 'not a casual expression of belief' but 'a deliberate affirmation of the matters stated,' it may be regarded as a positive assertion of fact. [Citation.] Moreover, *when a party possesses or holds itself out as possessing superior knowledge or special information or expertise regarding the subject matter* and a plaintiff is so situated that it may reasonably rely on such supposed knowledge, information, or expertise, the defendant's representation may be treated as one of material fact." (*Bily v. Arthur Young & Co*. (1992) 3 Cal.4th 370, 408, italics added; see also *Gagne v. Bertran* (1954) 43 Cal.2d 481, 489; *Cohen v. S & S Construction Company* (1983) 151 Cal.App.3d 941, 946.)

20

Although the parties dispute what the applicable statute of limitations is with respect to plaintiffs' cause of action for negligent misrepresentation, we conclude that it is of no consequence because under even the longest possible period—i.e., the four years provided pursuant to Code of Civil Procedure section 343[8] urged by plaintiffs in their appellate briefing—the cause of action is time-barred.

According to the Coldwell defendants, plaintiffs had constructive notice of the existence of the easement and the covenant because the covenant was a recorded document.  The Coldwell defendants claim that because the plaintiffs had constructive notice that they were damaged as of the date that plaintiffs took title to the property, which was in January 2007, the claim is time-barred.

"Civil Code section 1213 provides that every 'conveyance' of real property recorded as prescribed by law provides 'constructive notice' of its contents to subsequent purchasers.  The term 'conveyance' is broadly defined to include *'every instrument* in writing . . . by which the title to any real property *may be affected . . . .*'  [Citation.] Constructive notice 'is the equivalent of *actual knowledge*; i.e., knowledge of its contents is conclusively presumed.' "  (*Citizens for Covenant Compliance v. Anderson* (1995) 12 Cal.4th 345, 355.)  Thus, plaintiffs are charged with the equivalent of actual knowledge of the existence and contents of the covenant as of January 2007.  Once plaintiffs had constructive notice of the covenant and its contents, which revealed that the property they

---

8    Code of Civil Procedure section 343 provides: "An action for relief not hereinbefore provided for must be commenced within four years after the cause of action shall have accrued."

had purchased was burdened by an easement for a paved access road, they were on notice of the existence of their negligent misrepresentation claim based on Anderson's alleged comments to them that "everything [is] fine." Plaintiffs' negligent misrepresentation claim therefore accrued as of January 2007. Their amendment to add the Coldwell defendants and assert a negligent misrepresentation cause of action against the Coldwell defendants in October 2011 occurred more than four years after their claim accrued. Any cause of action for negligent misrepresentation that plaintiffs could allege would thus be untimely.

We conclude that plaintiffs have not demonstrated how they could amend the operative complaint to attempt to restate any of their causes of action. We therefore affirm the trial court's order denying plaintiffs leave to amend.

IV.

DISPOSITION

The judgment is affirmed. The Coldwell defendants are entitled to costs on appeal.

 

                                                                         AARON, J.

WE CONCUR:

 

McCONNELL, P. J.

 

McDONALD, J.

22